369 A.2d 332

Meril D. BOTTORF, Jr., a Minor, by His Guardian,
Meril D. Bottorf, Sr., and Meril D. Bottorf, Sr.,
Appellees,

v.

Joseph WALTZ and Keystone Central
School District, Appellants,

v.

Levina REEDER, Additional Defendant-Appellee.

Appeal of KEYSTONE CENTRAL SCHOOL DISTRICT.

Superior Court of Pennsylvania.

Argued June 21, 1976.

Decided Nov. 22, 1976.

**140**

H. Clay McCormick, Williamsport, for appellant at No. 1140.

John C. Youngman, Sr., Williamsport, for appellant at No. 1141.

John P. Campana, Williamsport, for appellees.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, and VAN der VOORT, JJ.

CERCONE, Judge:

This is an appeal from an order of the Court of Common Pleas of Clinton County, granting plaintiffs-appellees judgment n. o. v. after a jury verdict for defendants.

The action arises from an incident that occurred in a seventh grade art class taught by defendant Joseph Waltz. The minor plaintiff, Meril D. Bottorf, Jr., whose father joined in his complaint as his guardian and in his own right, was severely burned when a makeshift candle mold fell over and spilled melted wax on his back.

The circumstances precipitating the accident, viewed, as they must be, in the light most favorable to the ver-

dict winners (*Rost v. Wickenheiser*, 229 Pa.Super. 84, 323 A.2d 154 (1974)), were as follows:

Defendant Waltz decided in November of 1973 to teach candle-making to his art class at Lock Haven Junior High School. The school district supplied hot plates, some molds, wicks, melting pots, and hot pads. The hot plates had no thermostatic control. When the project began, double boilers (with the wax in a top container and water in a bottom one) were used to heat the wax. This limited the temperature of the wax to the temperature at which water boils, 212°. The necessity of getting the experiment completed within a 45-minute class period, however, impelled a change to a faster procedure, and so, the students were permitted to place the melting pots directly on the hot plates, but were instructed to pour the wax into the molds as soon as it was liquid. Waltz instructed the students as to the dangers involved in dealing with hot wax, the precautions to be taken, and the first-aid procedures to be followed in the event of a burn. Three candle-making stations were set up at heavy work tables along the wall to Waltz's left. During each class period one candlemaker and one helper were to work at each station while the rest of the class remained in their regular seats and worked on other projects.

On December 19, 1973, Kerry Johnson was the candlemaker and plaintiff was his helper at the station closest to Waltz's desk. It came to Waltz's attention that some wax at this station had been spilled on the floor while it was being poured from the pot into the mold. The boys were instructed to clean it off before it hardened. Levina Reeder, another student, age 12, came up to Waltz's desk with a paper to be graded. Mr. Waltz then gave her a screwdriver and told her to take it over to plaintiff's station for the boys to use to scrape the wax off the floor. Levina gave plaintiff the screwdriver. Plaintiff was at the moment on his hands and knees, apparently cleaning wax off the floor. As Levina was turning

to leave the station she bumped either the table or the mold, whereupon the mold tipped over and spilled hot wax on plaintiff.

The complaint alleged negligent supervision on Waltz's part and negligence Keystone Central School District in failing to provide proper equipment and safety instructions to its employees. Both defendants joined Levina Reeder as an additional defendant.

The court ordered a bifurcated trial with damages to be determined in a later proceeding in the event liability was found. The court directed a verdict in favor of Keystone Central School District on the issue of its individual liability but sent the issue of its vicarious liability for Waltz's conduct to the jury along with the issues of the individual liability of Waltz and Levina Reeder. The jury returned a verdict in favor of all defendants. Plaintiffs, who had requested binding instructions at the close of the evidence, moved for judgment n. o. v. This was granted as to Waltz and Keystone Central; the verdict in favor of Levina Reeder was not disturbed.

■ We agree with defendant's contention that judgment n. o. v. was improperly entered. In *Cummings v. Nazareth Borough*, 427 Pa. 14, 25–26, 233 A.2d 874, 881 (1967) the court said:

"The rendering of a judgment n. o. v. is a drastic act because it overturns the findings of a jury, the fact-finding tribunal in our procedure. Judgment n. o. v. should be entered only when the facts are such that no two reasonable persons could fail to agree that the ver dict was improper."

■ This is not such a case. The question of Waltz's negligence was for the jury. Although we are aware of no Pennsylvania case law defining the standard of care required of a teacher, numerous other jurisdictions have

dealt with the problem. The results are summarized in Annotation, 38 A.L.R.3d 830, §§ 843–46:

" . . . [W]here pupils make potentially dangerous instrumentalities in class, the teacher may have a duty to instruct with respect thereto.

What constitutes proper supervision depends largely upon the circumstances attending the event. Thus, the fact that supervisory personnel present when an accident occurs could conceivably have prevented its occurrence does not necessarily render the school agency liable if the supervisory personnel was competent and acted reasonably under all the circumstances.

The fact that an injury occurs while a pupil is on an errand or is performing a task on specific directions of the teacher does not necessarily establish negligent supervision, since it is the duty of the teacher, as a reasonable and prudent person, to guard only against such accidents as are reasonably foreseeable.

There is no liability predicated on lack or insufficiency of supervision where the event in connection with which the injury occurred was not reasonably foreseeable. . . . The courts frequently state that a teacher is not required to anticipate the myriad of unexpected acts which occur daily in and about school, to guard against all dangers inherent in the rashness of children, or to watch all movements of children.

Where injury results from an unforeseen, sudden, impulsive, or spontaneous act of another pupil, such act has been held the intervening proximate cause of the injury notwithstanding lack, or possible inadequacy, of supervision. Thus, it has been said that failure of supervision is not that proximate cause of an accident where injury results from an unanticipated act of a fellow pupil, since the teacher cannot be expected to watch all movements of pupils in the absence of anything to place the teacher on notice to guard against the occurrence."

■ One of the cited cases, *Morris v. Ortiz*, 103 Ariz. 119, 437 P.2d 652, 657 (1968) (dissenting opinion) supplies us with this summary of the applicable law:

"An examination of the cases and commentaries discloses that three basic duties arise from the teacher-student relationship: (1) the duty to supervise; (2) the duty to exercise good judgment; and (3) the duty to instruct as to correct procedures, particularly (but not exclusively) when potentially hazardous conditions or instrumentalities are present. These basic duties must co-exist with the whole purpose for the teacher-student relationship, viz. education."

The facts upon which the lower court relied in concluding that Waltz was negligent as a matter of law were (1) his allowing a potato chip can to be used as a mold (regular candle molds are usually weighted at the bottom); (2) his decision to use hot plates without thermostats; (3) his remaining at his desk while the candlemaking activity was taking place; (4) his sending Levina Reeder to the station. The opinion states:

"Probably none of the previously discussed facts standing by themselves would warrant the finding of negligence as a matter of law. However, considering all of these facts together, the Court is convinced that the overall lack of active supervision by Defendant Waltz would amount to negligence as a matter of law."

The record indicates, however, that every risk created by actions of the defendant was counterbalanced by precautions that a jury could reasonably find to be sufficient. The class was under instructions to be in their seats when not making candles or consulting with the teacher, unless they had his permission to be elsewhere; this, of course, reduced the likelihood of a mold being knocked over. The candlemakers were instructed to watch the wax and remove it from the hot plates as soon as it was melted, before it reached the boiling point. Plaintiff, himself, testified that he followed these in-

structions. Defendant's decision to remain at his desk was reasonable; the lower court's conclusion that he should have been physically present at the candlemaking station overlooked the fact that there were three stations and that he would have had to pace up and down to watch all of them, an activity that might well have had an unnerving and distracting effect on the candlemakers. Why the court considered him negligent in sending Levina Reeder to the candlemaking station is not clear to us, because she had received the same cautionary instructions as the rest of the class concerning care to be taken when in the vicinity of one of the stations.

It is a natural reaction to the facts of this case to wish that Waltz's precautions had been greater. It does not follow that his actions were negligent as a matter of law. Under all the circumstances here a jury could reasonably conclude that he fulfilled his duty of supervision, exercised good though not perfect judgment, and gave instructions commensurate with the dangers involved in the activity and the educational purpose to be served by that activity. As the agencies that produced the injury (the melted wax, a potato chip can, and a twelve-year-old girl) are familiar ones to the average juror, the lower court's conclusion that "the complex liability issues together with the multiplicity of parties served to confuse the jury and thus prevented its collective understanding of the rules of law applicable to the case" is unfounded. To sustain the court's substitution of its own hindsight evaluation of Waltz's conduct for the jury's determination would come close to holding teachers and school districts to be insurers of the safety of students, a rule unsupported by any authority presented to us and potentially detrimental to the educational process.

The judgment n. o. v. is reversed and the case is remanded for consideration of plaintiff's motion for a new trial.

SPAETH, J., absent.