**INSURANCE FEDERATION OF PENNSYLVANIA, INC., et al.**

v.

**SUPREME COURT OF PENNSYLVANIA et al.**

**Civ. A. No. 79–3925.**

United States District Court, E. D. Pennsylvania.

April 17, 1980.

**90**

Theodore W. Flowers, Joan D. Katz, Philadelphia, for plaintiffs.

Harold E. Kohn, David H. Marion, Joseph F. Roda, Philadelphia, for defendants.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

This is a suit by twelve named institutional plaintiffs against the Supreme Court of Pennsylvania and its member Justices, challenging the constitutionality of Pennsylvania Rule of Civil Procedure 238 under the Fourteenth Amendment to the United States Constitution. Jurisdiction of this Court is based on 28 U.S.C. §§ 1331 and 1343. Rule 238 provides that "damages for delay" shall be added to any judgment recovered in an action for personal injury, death or property damage in the Pennsylvania courts, in the amount of ten percent of the underlying judgment, per annum, for each year or part thereof during which the case is pending. The Rule also provides that damages for delay will not be assessed from the date a settlement offer is made if the offer is in an amount equal to or greater

1. The text of Rule 238 is set forth as an Appendix to this opinion.

2. The plaintiffs seek to represent a class of all persons who are or may be defendants in personal injury actions in the Pennsylvania courts. The action has not been certified as a class action.

than eighty percent of the judgment ultimately recovered by the personal injury plaintiff.[1]

The plaintiffs seek a declaration that Rule 238 denies them equal protection and due process of law as defendants in the Pennsylvania courts[2], and they seek to enjoin the continued application of Rule 238 in the courts of the Commonwealth.

The defendants have moved to dismiss the plaintiffs' complaint. For the reasons set forth below, the defendants' motion is granted.

This Court will not, indeed cannot, reach merits of the plaintiffs' constitutional claims. Principles of federalism preclude our consideration of the substantive issues raised in the complaint.

One of the apparent objects of Rule 238 is to compensate plaintiffs for the loss of theuse of funds towhich they are entitled, that is, tomake them whole. Part (e) of Rule 238 indicates, however, that the Rule has purposes otherthan compensation of injured plaintiffs. If a plaintiff has refused to accept a settlementoffer that is as low as eighty percent of his actual loss as determined by judgment, delay damages will not be assessed for thetime after which the offer was made. An obvious purpose of the provision is to encourage early settlements. The state's interest in the operation of the Rule is manifest.[3]

This case is controlled by the decision of the United States Supreme Court in *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977). There, the Court held that principles of comity and federalism require the federal courts to abstain from exercising jurisdiction over federal constitutional claims where the exercise of jurisdiction would result in unnecessary infringe-

3. Rule 238 was drafted by the Civil Procedural Rules Committee of the Supreme Court of Pennsylvania to deal with the "vex[ing] . . . problem of delay in the disposition of civil actions for bodily injury, death or property damages pending in the trial courts." Explanatory Comment, Rule 238, The Legal Intelligencer, September 20, 1978. The Rule was designed to provide an incentive for early settlement of such cases. *Id.*

ment of a state's interest in the administration of civil litigation in its courts.

*Juidice* was a suit against members of the New York judiciary, brought in the United States District Court for the Southern District of New York, challenging the constitutionality of New York's procedures governing civil contempt. The federal plaintiffs were state court judgment debtors who were held in civil contempt in the state courts for failure to appear at post-judgment proceedings relating to satisfaction of judgments. A three-judge federal district court declared the New York contempt provisions constitutionally invalid because they permitted a civil litigant to be held in contempt of court, fined and jailed, without appropriate notice, a full adversary hearing, and representation by counsel. *Vail v. Quinlan*, 406 F.Supp. 951, 959–60 (S.D.N.Y. 1976).

On appeal, the Supreme Court reversed, holding that the district court should not have reached the merits of the constitutional claims, but instead should have abstained in favor of staet court adjudication of those claims. The Court set forth the reasons for its decision in language particularly instructive to the case at hand:

> "[T]he principles of *Younger [v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)] and *Huffman [v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975)] are not confined solely to the types of state actions which were sought to be enjoined in those cases. As we emphasized in Huffman, the 'more vital consideration' behind the Younger doctrine of nonintervention lay not in the fact that the state criminal process was involved but rather in
>
> > ' "the notion of 'comity' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." ' *Huffman*, 420 U.S.

at 601, [95 S.Ct. at 1206], quoting *Younger*, 401 U.S. at 44, 91 S.Ct. at 750.

> . . . . .

> These principles apply to a case in which the State's contempt process is involved. A State's interest in the contempt process, through which it vindicates the regular operation of its judicial system, so long as that system itself affords the opportunity to pursue federal claims within it, is surely an important interest. . . . The contempt power lies at the core of the administration of a State's judicial system [citation omitted]. Whether disobedience of a court-sanctioned subpoena, and the resulting process leading to a finding of contempt of court, is labeled civil, quasi-criminal, or criminal in nature, we think the salient fact is that federal-court interference with the State's contempt process is 'an offense to the State's interest . . . likely to be every bit as great as it would be were this a criminal proceeding,' *Huffman*, supra, [420 U.S.], at 604, [95 S.Ct. at 1208]. Moreover, such interference with the contempt process not only 'unduly interfere[s] with the legitimate activities of the Stat[e],' *Younger*, supra [401 U.S.], at 44 9[91 S.Ct. at 750], but also 'can readily be interpreted as reflecting negatively upon the state court's ability to enforce constitutional principles.' *Huffman*, supra,[420 U.S.], at 604 [95 S.Ct. at 1208]."

*Juidice v. Vail, supra*, 430 U.S. at 334–6, 97 S.Ct. at 1217–1218.

The similarities between the facts of *Juidice* and those of the instant case bear enumeration. Both cases were brought by defendants in pending state civil litigation against members of the state judiciary to invalidate, on federal constitutional grounds, state law governing civil procedure. In both cases the language of the state law is unambiguous and a narrowing interpretation is unlikely. See *Vail v. Quinlan, supra*, 406 F.Supp. at 957–8. Both suits are challenges to state laws affecting the collection or assessment of money damages by or on behalf of prevailing civil litigants.

See *Juidice, supra*, 430 U.S. at 329–30, 97 S.Ct. at 1214. Both laws further the states' interests in affording civil litigants prompt vindication of their rights. Finally, the federal constitutional claims arised in each case can be or could have been asserted and fully developed in the state courts.[4]

There is, we should note, one significant distinction between *Juidice* and this case. In New York, the Civil Practice Law and Rules and the Judiciary Law are enacted by the state legislature, with provision for a Judicial Conference (consisting of activemembers of the New York judiciary) empowered to recommend legislation affecting the administration of the courts. N.Y. Judiciary Law (McKinney 1968), Art. 7-A, §§ 224, 228 (re-enacted in substance, L.1978, c. 156, § 7, N.Y.Judiciary Law (McKinney, Supp. 1979-80), Art. 7–A, §§ 214, 215). In Pennsylvania, the Rules of Civil Procedure are promulgated by the Supreme Court of Pennsylvania, pursuant to authority vested in that court by Article V, § 10 of the Pennsylvania Constitution.

The plaintiffs suggest that appealing through the state court system, and ultimately challenging Rule 238 before the court that enacted it, would be a "useless act". (TR. Oral Argument 25). On January 23,1979, plaintiff Insurance Company of North America filed with the Pennsylvania Supreme Court a Petition for Amendment or Rescission of Rule 238, raising various objections under the Pennsylvania Constitution. That petition was denied by the court on July 6, 1979. The plaintiffs argue that the Pennsylvania Supreme Court would not decide their federal constitutional claims differently in an appeal in a personal injury action.

We can appreciate that the plaintiffs do not believe that their chances for success in the state courts are good. Nevertheless, unlikelihood of success in the state courts is simply not a reason to overlook the plaintiffs' refusal first to raise their constitutional objections there:

"[T]he considerations of comity and federalism which underly Younger permit no truncation of the exhaustion requirementmerely because the losing party in the state court of general jurisdiction believes that his chances of success on appeal are not auspicious. Appellee obviously believes itself possessed of a viable federal claim, else it would not so assiduously seek tolitigate in the District Court. Yet, Art. VI of the United States Constitution declares that 'the Judges in every State shall be bound' by the Federal Constitution, laws, and treaties. Appellee is in truth urging us to base a rule on the assumption that state judges will not be faithful to their constitutional responsibilities. This we refuse to do. The District Court shouldnot have entertained this action, seeking pre-appeal interference with a state judicial proceeding, unless appellee established that early intervention was justified under one of the exceptions recognized in *Younger*."

*Huffman v. Pursue, Ltd.*, 420 U.S. 592, 610–11, 95 S.Ct. 1200, 1211, 43 L.Ed.2d 482 (1975).

---

**4.** Each of the plaintiffs in this case is or "may be" a defendant in a state action for personal injury, death or property damage (Complaint ¶ 12), and can challenge the constitutionality of Rule 238 by way of an affirmative defense under Pa.R.Civ.P. 1045(b). Cf. *Dowlin v. Coatesville Area School District*, 22 Pa. Cmwlth. 433, 350 A.2d 190 '(1975); *Bensalem Twp. School Dist. v. Terry*, 8 D. & C.2d 765 (C.P. Bucks 1956). A trial court would not be likely to reach the constitutional issue util a plaintiff's right to damages is established, but a bifurcated trial, wherein damages issues are tried separately, is permitted under Pennsylvania practice. Pa.R.Civ.P. 213(b); see, e. g., *Bottorf v. Waltz*, 245 Pa.Super. 139, 369 A.2d 332 (1976). Assuming factual issues were to exist on the constitutional defense, they could be tried as part of the damages case, or even tried as a separate issue—see Rule 213(b), *supra*. Certainly, the factual issues raised by the constitutional defense (if any exist) would complicate a personal injury case, but it is clear that a defendant nevertheless must be permitted an opportunity to raise such a defense in the trial court. *Montgomery County Bar Assn. v. Rinalducci*, 329 Pa. 296, 298, 197 A. 924 (1938); *Second Employers' Liability Act Cases*, 223 Pa. 1, 32 S.Ct. 169, 56 L.Ed. 327 (1912); see also Pa.R.Civ.P. 235. Thereafter, the state court defendant has a right of appeal, if desired, to the Pennsylvania Superior Court and the Pennsylvania Supreme Court.

This Court is not prepared to assume, as the plaintiffs would have us assume, that the Supreme Court of Pennsylvania will not give serious consideration to the federal constitutional issues raised here. If the plaintiffs' constitutional contentions have merit, that merit will be discernible on a record properly developed in the state courts. Certainly, the action of the Supreme Court in denying a petition to modify Rule 238 before its effects were clear does not unerringly indicate what its decision would be upon review of a full record.

In the event that the Supreme Court of Pennsylvania does reject a state court defendant's federal constitutional challenge to Rule 238, that defendant of course has an appeal of right to the United Sates Supreme Court under 28 U.S.C. § 1257.[5] The plaintiffs are thus assured of a federal forum in which to be heard on themerits of the federal constitutional claim they have attempted to raise here.[6]

The courts of Pennsylvania are the appropriate courts to determine whether Rule 238, on its face or as applied in litigation, violates the federal constitutional rights of defendants in the Pennsylvania courts. Exercise of jurisdiction by this Court would interfere with the Commonwealth's management of the business of its courts, without offering a more informed or more thorough consideration of the constitutional issues raised in this case. Accordingly, the defendants' motion to dismiss the complaint must be granted.

## APPENDIX

"RULE 238. *Award of Damages for Delay in an Action for Bodily Injury, Death or Property Damage*

(a) Except as provided in subdivision (e), in an action seeking monetary relief for bodily injury, death or property damage, or any combination thereof, the court or the arbitrators appointed under the Arbitration Act of June 16, 1836, P.S. 715, as amended, 5 P.S. § 30 et seq., or the Health Care Services Malpractice Act of October 15, 1975, P.L. 390, 40 P.S. § 1301.101 et seq., shall

(1) add to the amount of compensatory damages in the award of the arbitrators, in the verdict of a jury, or in the court's decision in a nonjury trial, damages for delay at ten (10) percent per annum, not compounded, which shall become part of the award, verdict or decision;

(2) compute the damages for delay from the date the plaintiff filed the initial complaint in the action or from a date one year after the accrual of the cause of action, whichever is later, up to the date of the award, verdict or decision.

(b) In arbitration under the Act of 1836, the amountof damages for delay shall not be included in determining whether the amount in controversy is within the jurisdiction of the arbitrators.

(c) Except as provided in subdivision (e), damages delay shall be added to the award, verdict or decision against all defendants found liable, no matter when joined in the action.

(d) The court may, and on request of a party shall, charge thejury that if it finds for the plaintiff, it shall not award the plaintiff any damages for delay because this is a matter for the court.

(e) If a defendant at any time prior to trial makes a written offer of settlement in a specified sum with prompt cash payment to the plaintiff, and continues that offer in effect until commencement of trial, but the offer is not accepted and the

---

**5.** Section 1257 permits an appeal of right to the Supreme Court where the highest court of a state has denied a federal constitutional challenge to a state "statute". It is clear that the term "statute" as it is used in § 1257 includes any enactment having the force of state law, and would encompass a rule of court. See *John P. King Mfg. Co. v. City Council of Augus-* ta, 277 U.S. 100, 48 S.Ct. 489, 72 L.Ed. 801 (1928).

**6.** We do not reach the question of whether the plaintiffs are *entitled* to a federal forum in which to raise their federal constitutional claims. See *Huffman v. Pursue, Ltd.,* supra, 420 U.S. at 606, 95 S.Ct. at 1209.

plaintiff does not recover by award, verdict or decision, eclusive of damages for delay, more than 125 percent of the offer, the court or the arbitrators shall not award damages for delay for the period after the date the offer was made.

(f) If an action is pending on the effective date of this rule, or if an action is brought after the effective date on a cause of action which accrued prior to the effective date, damages for delay shall be computed from the date plaintiff files the initial complaint or from a date one year after the accrual of the cause of action, or from a date six (6) months after the effective date of this rule, whichever date is later.

(g) This rule shall not apply to

(1) eminent domain proceedings;

(2) pending actions in which damages for delay are allowable in the absence of this rule."