433 A.2d 851

**Gregory A. KASEMER and Patrick G. Kasemer, a co-partnership, d/b/a Fountain House Park, and Andrew G. Kasemer and Dorothy M. Kasemer, Appellants,**

**v.**

**NATIONAL FUEL GAS DISTRIBUTION CORPORATION, Appellee.**

Supreme Court of Pennsylvania.

Argued April 27, 1981.

Decided July 2, 1981.

Reargument Denied Aug. 24, 1981.

___

Paul D. Shafer, Jr., Meadville, for appellants.

Norman H. Stark, James M. Antoun, Erie, for appellee.

Before ROBERTS, NIX, LARSEN, FLAHERTY, KAUFFMAN and WILKINSON, JJ.

## ORDER

PER CURIAM.

The Court being equally divided, the order of the Superior Court is affirmed.

ROBERTS, J., files an Opinion in Support of Affirmance in which NIX and WILKINSON, JJ., join.

FLAHERTY, J., files an Opinion in Support of Reversal in which LARSEN and KAUFFMAN, JJ., join.

O'BRIEN, C.J., did not participate in the consideration or decision of this case.

## OPINION IN SUPPORT OF AFFIRMANCE

ROBERTS, Justice.

This appeal from an order of the Superior Court granting judgment n.o.v. to appellee National Fuel Gas Distribution Corporation (NFG) presents the question whether a utility ordered by the Public Utility Commission to discontinue service to a new customer may be held liable for breach of contract. At trial, the court instructed the jury that, notwithstanding the duty of NFG to obey the order of the commission, NFG would be liable for breach of contract if it was guilty of "contributing fault." Restatement of Contracts § 458 (1932). The jury returned a verdict in favor of appellants and awarded damages of $45,000. On appeal, a majority of the Superior Court granted NFG's motion for judgment n.o.v. Observing that NFG is not an ordinary party to a contract but rather "a 'utility,' ... subject to control and regulation by the PUC," the Superior Court correctly held that such a utility "should not be subjected to liability for damages to others for acts done by it in compliance with the PUC's orders unless there is evidence of bad faith or malice on [the utility's] part, or gross negligence." *Kasemer v. Nat'l Fuel Gas Distribution Corp.*, 279 Pa.Super. 334, 341, 421 A.2d 226, 229 (1980). Applying this standard, which properly recognizes the practical difficulties faced by a utility in serving two masters, the Superior Court found that appellants had neither alleged nor proved the existence of such conduct on the part of NFG.

The facts of this case present a classic example of the difficulties with which a utility is faced when confronted with the conflicting demands of one of its customers and the Public Utility Commission. On April 1, 1975, NFG determined that it could not supply gas to additional tenants of appellant without exceeding its peak capacity in violation of a February 1972 order of the PUC. On May 27, 1975, appellants secured an injunction from the court of common pleas directing NFG to provide gas service to appellants' tenants. NFG immediately complied with the injunction. On July 23, 1975, the PUC ordered NFG to cease making

sales to customers other than those already being served. NFG thereupon refused to supply gas to additional tenants of appellants. On August 12, 1975, the court of common pleas held NFG in contempt of the May 27 order. NFG immediately purged itself of the contempt by renewing the supply of gas to appellants' customers. NFG also appealed the contempt order to the Superior Court, challenging the jurisdiction of the court of common pleas to enter the order in light of the conflicting cease and desist order of the PUC. NFG did *not* ask for a supersedeas, but continued to provide gas service to appellants until the PUC intervened and secured a supersedeas on October 6, 1975. On March 6, 1975, appellants filed a motion to remove the supersedeas. NFG responded by asking the Superior Court "to maintain the supersedeas as modified until such time as it decides the jurisdictional issue that is the subject of the Appeal." Record at 63a. On November 22, 1976, the Superior Court affirmed the contempt order, and NFG immediately resumed service to appellants. In short, NFG attempted throughout these proceedings to comply in good faith with every conflicting order it received.

The Opinion in Support of Reversal would hold that NFG's answer in opposition to appellants' motion to remove the supersedeas constitutes "contributing fault" under section 458 of the Restatement of Contracts and thus subjects NFG to liability for breach of contract.* Yet if NFG had supported appellants' motion, it would have been denying the authority of the PUC to regulate its gas distribution.

It would be absurd to hold NFG liable for breach of contract for its belief that it was subject to a valid order of the commission statutorily empowered to regulate it. Especially is this so in light of section 508 of the Public Utility Code, which provides that "[t]he commission shall have

---

* The Opinion in Support of Reversal also finds significance in the fact that NFG and the PUC had been "in touch" prior to the PUC's intervention to petition for a supersedeas. This fact is, of course, irrelevant. It would be strange indeed if a utility did *not* get "in touch" with its regulatory commission when faced with conflicting orders of the commission and a court.

power and authority to vary, reform, or revise, upon a fair, reasonable, and equitable basis, any obligations, terms, or conditions of any contract heretofore or hereafter entered into between any public utility and any person, corporation, or municipal corporation, which embrace or concern a public right, benefit, privilege, duty, or franchise, or the grant thereof, or are otherwise affected or concerned with the public interest and the general well-being of this Commonwealth."

Surely the Legislature did not grant such broad power to the Public Utility Commission to act in the public interest with the expectation that regulated utilities would be required to oppose the exercise of those powers every time a customer was adversely affected or else be held liable for breach of contract. Rather, the possibility of PUC intervention is implicit in all contracts between a utility and its customers, and a utility should not be held liable for compliance with that intervention, whatever form it may take, absent "evidence of bad faith or malice . . . or gross negligence," none of which the Superior Court found to exist.

The order of the Superior Court must be affirmed.

NIX and WILKINSON, JJ., join in this Opinion in Support of Affirmance.

## OPINION IN SUPPORT OF REVERSAL

FLAHERTY, Justice.

Petitioners, Gregory Kasemer, et al. (hereinafter Kasemers) began development of a proposed one hundred site mobile home park in 1972. Prior to commencing construction, the Kasemers entered into a contract with appellee, National Fuel Gas Distribution Corporation (hereinafter NFG) whereby NFG was to provide gas service to all units of the mobile home park. On February 1, 1972, the Pennsylvania Public Utility Commission (hereinafter PUC) issued an order prohibiting gas utilities from entering a contract to supply gas where such contract would cause annual or peak day deliveries to exceed annual or peak day supplies. Pursu-

ant to this order, NFG submitted a letter to the PUC which stated NFG would no longer provide gas service for new customers "unless the customer had applied for service or received commitment from the company." This letter was approved by the PUC and made part of NFG's tariff.

By the end of 1974, the Kasemers had readied eleven sites for occupancy, five of which were occupied and receiving gas from NFG by April 1, 1975. However, on April 1, 1975, NFG refused to supply gas to any additional tenants of the Kasemers. This action was taken due to earlier curtailments of gas by NFG's suppliers in December of 1974 and NFG's self-determination that the PUC's order not to contract to supply gas beyond peak capacity was then applicable. The Kasemers then brought an action in equity against NFG seeking a mandatory injunction to force NFG to supply gas service pursuant to the contract. On May 27, 1975, the Court of Common Pleas of Crawford County ordered NFG to provide gas service to the Kasemers up to a maximum of thirty units, thereby assuring gas to incoming tenants. NFG complied with this order until July 23, 1975 when the PUC issued an order without notice to either the Kasemers or the court directing NFG to cease making sales of gas to customers other than those already being served. Pursuant to this order, NFG refused to supply gas to additional tenants of the Kasemers.

On August 12, 1975, the Common Pleas Court held NFG in contempt of the court's order of May 27, 1975. NFG purged itself of the contempt by renewing the supply of gas to the tenants of the Kasemers, but appealed the contempt order to the Superior Court without asking for a supersedeas. On October 8, 1975, the Superior Court granted a PUC petition [1]

1. NFG has placed great emphasis on the fact that it was the PUC that petitioned Superior Court for the supersedeas preventing performance of the contract. However, under Rule 1736 of the Rules of Appellate Procedure, the PUC is exempt from the requirement of filing "appropriate security" in order for an appeal to operate as a supersedeas. NFG is not exempt from this requirement. With this perspective, the observation of the trial court that NFG and the PUC were "in touch" prior to the PUC's petition for the supersedeas takes on significance.

to intervene in the appeal and for a supersedeas and specifically ordered NFG to cease further attachments of residential service directed by the Court of Common Pleas. NFG complied.

On March 6, 1976, the Kasemers filed a motion to remove the supersedeas, NFG filed an answer in opposition, and the motion was denied. NFG renewed service to the Kasemers on November 22, 1976 when the Superior Court affirmed the contempt order.

The present action in assumpsit, seeking damages for loss of income resulting from NFG's alleged breach of a contract to supply gas, was filed by the Kasemers in August 1976. After a jury trial, a verdict was returned against NFG for the amount of $45,000.00. Motions for judgment n.o.v. and for a new trial were denied, and judgment was entered on the verdict. An appeal was then taken by NFG to the Superior Court which reversed and granted judgment n.o.v.[2] The Kasemers petitioned this court for review. We granted allocatur and this appeal followed.

At issue is the propriety of granting defendant's motion for judgment notwithstanding the verdict for the plaintiffs. We would reverse the Superior Court and would conclude that entry of judgment n.o.v. was improper in the instant case due to the presence of an issue of fact which was properly submitted by the trial court to the jury.

At the close of the evidence, NFG sought a directed verdict and binding instructions to the jury by the trial court to the effect that the principle set forth in section 458 of the Restatement of Contracts discharged it from liability under the contract. Because there was elicited at trial evidence tending to show that NFG and the PUC were "in touch" prior to the PUC's petition to intervene and petition for a supersedeas and because NFG in its answer to the Kasemers' motion to remove the supersedeas opposed the motion, the court declined to do so, concluding that to so rule would constitute a finding, as a matter of law, that NFG was

2. *Kasemer v. National Fuel Gas Distribution Corporation*, 279 Pa.Super. 334, 421 A.2d 226 (1980).

discharged when there was an issue of fact under section 458 which should be considered by the jury. Accordingly, the court submitted the issue to the jury.

Section 458 of the Restatement of Contracts was adopted as the law of this Commonwealth in *Olyphant Borough School District v. American Surety Co. of New York*, 322 Pa. 22, 184 A. 758 (1936) and reaffirmed in *Burkus v. Henshall*, 386 Pa. 478, 126 A.2d 722 (1956). Section 458 provides:

A contractual duty or a duty to make compensation is discharged, *in the absence of circumstances showing either a contrary intention or contributing fault on the part of the person subject to the duty,* where performance is subsequently prevented or prohibited

. . . .

(b) by a judicial, executive or administrative order made with due authority by a judge or other officer of the United States, or of any one of the United States.

(Emphasis supplied.)

In *Burkus v. Henshall, supra* this Court elaborated upon the meaning of the above emphasized language, citing Summary of Pennsylvania Jurisprudence, Contracts, section 465 which states that

[t]here is appended to all contracts an implied condition that after the making of the agreement, no law or governmental regulation will be enacted rendering continued performance of the contract unlawful. Therefore, *where without fault of the party* his continued performance of a contract is rendered illegal by a subsequent governmental regulation, his duty of rendering performance is discharged.

386 Pa. at 481, 126 A.2d at 725 (1936) (emphasis supplied.)

The consideration of possible fault on the part of the party seeking the discharge was also made a part of the test in *Olyphant Borough School District, v. American Surety Co. of New York*, 322 Pa. 22, 184 A. 758 (1936) where we stated: "It is a fundamental principle that where the performance of a contract is prevented, without fault on the part of the

promisor, by a proper judicial order, the obligation to perform is discharged: *Restatement, Contracts*, section 458, see *Monaca Boro. v. M. & A. St. Ry. Co.*, 247 Pa. 242, 93 A. 344; *3 Williston, Contracts*, section 1939." Id., 322 Pa. at 29, 184 A. at 761 (1936).

In reviewing the Superior Court's entry of judgment n.o.v., we find it necessary to review the law regarding the entry of such a judgment. It must be noted that entry of judgment n.o.v. is a drastic measure which should be taken only where the facts are such that no two reasonable persons could fail to agree that the verdict was improper. *Cummings v. Borough of Nazareth*, 427 Pa. 14, 233 A.2d 874 (1967), appeal after remand, 430 Pa. 255, 242 A.2d 460 (1968); *Bottorf v. Waltz*, 245 Pa.Super. 139, 369 A.2d 332 (1976).

It is well established that if evidence on a material fact presents an issue of fact for decision by the jury, then entry of judgment n.o.v. is improper. *Berkeihiser v. Di Bartolemeo*, 413 Pa. 158, 196 A.2d 314 (1964); *Dempsey v. First National Bank of Scranton*, 353 Pa. 473, 46 A.2d 160 (1946); *Mitchell v. City of New Castle*, 275 Pa. 426, 119 A. 485 (1923); *Porter v. Commonwealth Casualty Co.*, 270 Pa. 508, 113 A. 688 (1921); *Moyer v. Ford Motor Co.*, 205 Pa.Super. 384, 209 A.2d 43 (1965); *Allentown Supply Corp. v. Stryer*, 202 Pa.Super. 78, 195 A.2d 274 (1963); *Naugle v. Reading Co.*, 145 Pa.Super. 341, 21 A.2d 109 (1941). The power of the court to enter a judgment for the losing party notwithstanding a verdict for the opposing party is not intended to be a means by which the court may invade the province of the jury and, in effect, overrule the findings of a jury; rather, it is merely a procedural device which is an extension, in time, of the power of the court to grant, at the close of the evidence, a directed verdict for a party. Thus, there is the requirement that a party who petitions the court for judgment n.o.v. must have requested, in writing, a binding instruction to the jury directing them to return a verdict for the movant. *Dora v. Dora*, 392 Pa. 433, 141 A.2d 587 (1958). So it is that the entry of judgment notwithstanding the verdict is not proper unless binding instructions could prop-

erly have been given. *F. W. Wise Co., Inc. v. Beech Creek Railroad Co.*, 437 Pa. 389, 263 A.2d 313 (1970), *Commonwealth, Dept. of Highways v. Eldridge*, 408 Pa. 391, 184 A.2d 488 (1962). In order that a judge may have time for reflection and deliberation on a case, there has arisen this method of entry of judgment which allows the trial court the flexibility of granting judgment for the movant even though the case has already gone to the jury. This aspect of judgment n.o.v. was expounded upon in *Dalmas v. Kemble*, 215 Pa. 410, 64 A. 559 (1906) where it was stated:

> If upon such consideration [of the evidence in light of a request for binding instructions] it shall appear that a binding direction for either party would have been proper at the close of the trial the court may enter judgment later with the same effect. But, on the other hand, if it should appear that there was conflict of evidence on a material fact, or any reason why there could not have been a binding direction then there can be no judgment against the verdict now.

Id., 215 Pa. at 413, 64 A. at 560 (1906).

With this view of judgment n.o.v., we would be constrained to conclude that the trial court acted properly in submitting to the jury[3] the material issue of fact of whether

---

**3.** The trial court charged the jury in accordance with the view stated in *Burkus v. Henshall, supra*, which asks whether the party seeking the discharge was without fault with regard to the subsequent impediment to performance.

The charge to the jury on this issue was as follows:

If you find there was a contract and that contract, the performance of that contract was stopped by the Superior Court and/or by the PUC, the Court says that where performance of a contract is enjoined by a decree of a court of competent jurisdiction, such decree shall operate to discharge the contract. That means the gas company wouldn't have to furnish gas, if, but only if, the party enjoined was in no way at fault. If the party enjoined was at fault either in the wrongful doing of acts which gave rise to the grounds for the injunction or in failing in good faith to contest the injunction proceedings to the best of his ability, the decree of court will not relieve him from responsibility in damages to the other party to the contract. That is taken from Section 458 of the restatement of contracts as interpreted in Summary of Pennsylvania Jurisprudence.

NFG's actions during the course of the proceedings constituted "contributing fault" under section 458. The jury found that there was a binding and enforceable contract between the parties. Certainly, it was consistent for the jury to then find that NFG's affirmative action in opposing a motion which, if granted, would have allowed performance of the contract, was in derogation of NFG's promise under the contract and constituted "contributing fault" precluding NFG from benefiting from the protection of section 458 of the Restatement of Contracts.

Accordingly, we would reverse the order of the Superior Court and would reinstate the judgment entered on the verdict.[4]

LARSEN and KAUFFMAN, JJ., join in this Opinion in Support of Reversal.

> Therefore, in applying the law, "I'll say to you once again, if you find there was no contract of any kind to furnish gas for any number of units, return a verdict for the defendant. If you find that there was a contract, you will then have to decide what period of time, if any, was the gas company excused from furnishing gas by the Court Order of the Superior Court, of the Public Utility Commission. And if you find that there was some periods of time that they were excused that they didn't in any way encourage, assist or contribute to the acts which gave rise to the injunction to start with, then, of course, they would be excused from payment of [sic] furnishing of gas during that period of time and would not be liable for damages.

4. NFG pleaded in the alternative for a new trial should Superior Court refuse to grant judgment n.o.v. NFG alleged: 1) that admission into evidence of the contempt order entered on August 12, 1975 by the Court of Common Pleas was reversible error, and 2) that admission of proof of lost profits was reversible error because the Kasemers' mobile home park was a relatively new business enterprise.

Review of the record reveals that as to the first issue, defense counsel did not object at trial to the admission of the contempt order. Accordingly, we would conclude that the issue was not preserved for appeal and is not reviewable. *Dilliplaine Lehigh Trust Company*, 457 Pa. 255, 322 A.2d 114 (1974).

The offer of proof of lost profits was objected to by NFG as too speculative. The court conducted an in camera hearing, taking detailed testimony from the preparer of the figures, to examine the factual basis used in deriving the figures and determined that there was an adequate foundation upon which to submit the issue of

damages to the jury. The jury was presented with the testimony and was instructed that any award of damages must be based upon proof of sufficient experience in the operation of the business so that the proof rests upon a definite basis and not upon speculation and conjecture. Our review reveals that the admission into evidence of the proof was proper, and we would so conclude.