**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 10-1217

_____

RORY M. WALSH, individually and as Natural
Guardian of C.R.W., a minor,
                                        Appellant,

v.

DR. ROBERT KRANTZ; MRS. SHARI YOUNG;
MRS. SUE CATHCART; MRS. KEENEY; MRS. KELLY
HEISEY; UNKNOWN DALLASTOWN STAFF MEMBER;
DR. STEWARD WEINBERG; DALLASTOWN AREA
SCHOOL DISTRICT; CATHY STONE; GREG ANDERSON

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 07-cv-00616)
District Judge: Christopher C. Conner

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 9, 2010

Before: FUENTES, GREENAWAY and VAN ANTWERPEN, <u>Circuit</u> <u>Judges</u>

(Opinion filed: July 12, 2010)
_____

OPINION
_____


PER CURIAM

        Appellant Rory M. Walsh filed a civil action pro se in United States District Court

for the Middle District of Pennsylvania against the Dallastown Area School District and a number of its officials and staff members, including then Principal Dr. Robert Krantz, Shari A. Young, Assistant Principal Sue A. Cathcart, Judy Keeney, Kelly Heisey, Superintendent Dr. Stewart Weinberg, Steven L. Turner, and an "unknown Dallastown staff member."[1]  Walsh filed the action on behalf of himself individually and his son, C.R.W., a Dallastown Area Middle School student, who attended the 7th grade during the 2005-2006 school year.

Walsh's original complaint set forth nine counts: (1) conspiracy in violation of 18 U.S.C. § 241; (2) conspiracy in violation of civil rights, 42 U.S.C. § 1985(3); (3) a Privacy Act violation, 5 U.S.C. § 552; (4) a violation of 18 U.S.C. § 119; (5) a Federal Wiretapping Act violation, 18 U.S.C. §§ 2510-2520; (6) a violation of 47 U.S.C. § 605 on unauthorized publication or use of communications; (7) a Pennsylvania Wiretap Act violation, 18 Pa. Cons. Stat. Ann. §§ 5703, 5704, 5725; (8) civil rights violations, 42 U.S.C. § 1983; and (9) a violation of 18 U.S.C. § 875 on interstate communications.  The claims related to two telephone calls Walsh made on March 29, 2006 to C.R.W. at the Middle School, the first to Dr. Krantz and the second to C.R.W.  Walsh alleged that Dr.

---

[1] Walsh also named the Pennsylvania Department of Education as a defendant.  The District Court dismissed this defendant pursuant to the Eleventh Amendment, see Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1983), and Walsh has not challenged this determination in his brief on appeal.  The issue of this defendant's dismissal is thus waived.  See Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir. 1993).

Krantz, with the assistance of an unknown Dallastown staff member and without authorization, eavesdropped on his telephone conversation with his son. Walsh also raised specific complaints about how he and his son were treated by school personnel. Walsh sought $600,000.00 in damages.

The defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). In an order entered on June 4, 2008, the District Court dismissed all claims based on federal criminal statutes (Counts One, Four, and Nine) because the specified statutes did not provide for a private right of enforcement, and private parties generally lack authority to enforce federal criminal statutes, see Connecticut Action Now, Inc. v. Roberts Plating Co., 457 F.2d 81, 86-87 (2d Cir. 1972). The District Court also dismissed the section 1985(3) claim (Count Two) for lack of an allegation that any race- or class-based discriminatory animus motivated the defendants' conduct, Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). In addition, the court dismissed the Privacy Act claim (Count Three) against the School District and Cathcart because the Act applies only to federal agencies, 5 U.S.C. § 552a(b); 5 U.S.C. § 552(e). See Schwier v. Cox, 340 F.3d 1284, 1287-88 (11th Cir. 2003) (Section 3 of Privacy Act applies only to federal agencies and sets forth an individual's right to records of federal agencies and right to be protected from disclosure of records by federal agencies).[2]

---

[2] The District Court correctly determined, for the reasons given by the court, that Counts One, Two, Three, Four, and Nine of the original complaint were subject to dismissal under Rule 12(b)(6) for failure to state a claim that is plausible on its face. See

3

As to Walsh's allegation that his Fourteenth Amendment substantive due process rights had been violated, the District Court determined that the alleged conduct of the defendants – recommending that C.R.W. be tested, changing due dates of assignments, calling Walsh names and otherwise attempting to precipitate an event at his residence, and restricting Walsh's access to the school – did not shock the conscience, see Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008) ("To establish a substantive due process claim, a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience."). The court also found no plausible substantive due process claim in Walsh's allegation that Assistant Principal Cathcart improperly informed C.R.W.'s teachers that Walsh had refused to allow C.R.W. to be tested. Accordingly, these section 1983 claims were dismissed.[3] The District Court allowed Walsh's federal and state wiretapping counts and section 1983 Fourth Amendment count to proceed, and granted Walsh leave to amend with respect to his count based on 47 U.S.C. § 605.

Walsh then filed his amended complaint, in which he added new claims, including one on behalf of C.R.W. and his other child, S.J.W., for breach of fiduciary trust, an individual claim and claims on behalf of C.R.W. and S.J.W. for intentional and negligent

_____

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). We will affirm these determinations, which do not require additional discussion.

[3] We agree with the District Court that the complaint failed to allege a plausible substantive due process violation. See Iqbal, 129 S. Ct. at 1949. We affirm this determination, which does not require additional discussion.

4

infliction of emotional distress, and a claim pursuant to 42 U.S.C. § 1981. The defendants responded by filing a motion to dismiss the amended complaint, Fed. R. Civ. Pro. 12(b)(6). In an order entered on August 22, 2008, the District Court finally dismissed Walsh's claim of a violation of 47 U.S.C. § 605, because the amended complaint did not allege an interstate or foreign communication, see id. at 605(a)(1).[4] The court dismissed the Pennsylvania Wiretap Act count brought on behalf of C.R.W. because, as the recipient of the communication at issue, he lacked standing, and the court dismissed the state wiretap count altogether as to the School District pursuant to its immunity from suit under the Political Subdivision Tort Claims Act, 18 Pa. Cons. Stat. Ann. § 8541.[5]

In the same order, the District Court dismissed the breach of fiduciary trust claim. Walsh alleged in the amended complaint that Dr. Weinberg and Kelly Heisey breached a fiduciary duty by ordering the Special Education Office to deliver a request for evaluation of C.R.W. to Walsh, and that Cathy Stone and Greg Anderson breached their fiduciary duty by attempting to assign S.J.W. to a lower grade level in math and refusing to discuss the matter with Walsh. The District Court concluded that no plausible claim was stated sufficient to survive a Rule 12(b)(6) motion, because the defendants' alleged conduct

---

[4] We affirm this determination, which does not require additional discussion. See Iqbal, 129 S. Ct. at 1949.

[5] Walsh has not challenged these two determinations in his brief on appeal and they are thus waived. See Kost, 1 F.3d at 182.

involved only recommendations, which Walsh subsequently rejected – a rejection school personnel accepted, see Bottorf v. Waltz, 369 A.2d 332, 334 (Pa. Super. Ct. 1976) (discussing basic duties involved in teacher-student relationship, including duty to exercise good judgment).

The District Court dismissed the intentional infliction of emotional distress count pursuant to Rule 12(b)(6) because the conduct alleged – belittling insults, heated emails, demands for C.R.W. to undergo educational testing, attempts to restrict S.J.W. from being taught at his grade level, threats to have Walsh arrested – was not outrageous and extreme, see Swisher v. Pitz, 868 A.2d 1228, 1231 (Pa. Super. Ct. 2005) (for tort of intentional infliction of emotional distress to proceed conduct alleged must be extreme and outrageous), and the court dismissed the negligent infliction of emotional distress claim because all of the conduct alleged was intentional. The claim under 42 U.S.C. § 1981 was dismissed because Walsh did not allege that he or his sons belonged to a protected class, or that the defendants acted with an intent to discriminate on the basis of race. See Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 569 (3d Cir. 2002).

The District Court referred all discovery matters to the Magistrate Judge and discovery then ensued. Walsh deposed several of the defendants and the defendants deposed Walsh. At the conclusion of discovery, the remaining defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). After the Magistrate Judge filed a Report and Recommendation, the District Court, in an order and

judgment entered on December 18, 2009, granted the defendants' motion.[6] Walsh

appeals.

We will affirm. We have jurisdiction under 28 U.S.C. § 1291. Walsh contends on appeal that summary judgment on the federal and state wiretap and Fourth Amendment claims was improper and the District Court ignored his expert report; the District Court should have recused; discovery was improperly limited and the District Court improperly barred him filing any further motions for reconsideration; he was improperly denied the opportunity to amend his complaint for a second time; and his section 1981, breach of fiduciary trust, and intentional and negligent infliction of emotional distress claims were improperly dismissed.

Our review of the District Court's grant of summary judgment is plenary and we must affirm if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Fed. R. Civ. Pro. 56(c) (effective through November 30, 2009).[7] Under Rule 56(c), the moving party must show that there is an absence of evidence to support the nonmoving party's case. See id. Once the moving party has met this burden, the nonmoving party

---

[6] Walsh's summary judgment motion was denied.

[7] Rule 56(c) was amended effective December 1, 2009, and continues to provide that: "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c)(2).

may not rest upon his allegations and arguments; rather, the nonmoving party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. Pro. 56(e)(2). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A plaintiff cannot avoid summary judgment with speculation; he must provide competent evidence from which a rational trier of fact can find in his favor. See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999).

The defendants plainly met their burden under Rule 56(c), and thus Walsh was required to go beyond his pleadings and allegations, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324 (quoting Rule 56(e)(2)). A material factual dispute is a dispute as to a factual issue that will affect the outcome of the trial under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We conclude that summary judgment in favor of Dr. Krantz and the School District was proper on Walsh's individual Federal Wiretapping Act claim and claim on behalf of C.R.W. Under the Federal Wiretapping Act, any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, oral, or electronic communication" violates the Act. 18 U.S.C. § 2511(1)(a). The Act defines "intercept" to mean "the aural or other acquisition

8

of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

During the first telephone call on the morning of March 29, 2006, Walsh spoke with Dr. Krantz and asked him to relay a message to C.R.W. Walsh placed a second call and spoke directly to C.R.W., who was allowed to take the call either in Dr. Krantz's or another administrator's office. Walsh contended that Dr. Krantz had the technology to eavesdrop on his call to C.R.W., and in fact intentionally listened in. Dr. Krantz testified in his deposition that C.R.W. took the call from Walsh. Dr. Krantz left the office where C.R.W. took the call and went out into the outer office area and talked to the secretaries. The District Court properly concluded that there was no evidence upon which a rational trier of fact could find that Dr. Krantz intercepted the second telephone call in violation of federal law. There were eye-witnesses to the events in question, they were deposed by Walsh, and they provided no support for his allegation that Dr. Krantz intercepted the call through use of any "electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

Walsh contends in his brief on appeal that a triable issue of material fact was established by his expert report, two emails from Dr. Krantz, and C.R.W.'s affidavit. Walsh supplied a letter from an expert, who stated that an Avaya Telephone Set 6416D has conference call capabilities. But, even if the Middle School Office had conference call capabilities, that fact alone is not probative of whether Dr. Krantz used conference call capabilities to listen in. Furthermore, nothing in the contents of the two emails sent

that morning by Dr. Krantz to Walsh provided evidence that Dr. Krantz listened in on another telephone while C.R.W. was talking to Walsh. The two emails indisputably do not provide *direct* evidence of an interception,[8] and inference of an interception cannot reasonably be drawn from the emails. Walsh contended that Dr. Krantz could not have referenced an "outline" and "extra credit assignment" in those emails unless he had been

---

[8] At 1:06 p.m., Dr. Krantz wrote:

> Mr. Walsh,
>
> [C.R.W.] informed me that you had asked him to give his outline (or finish) to Mr. Hartman and complete some extra credit. He was pulled from math class to talk with you. I would prefer not to call him between classes or during class for phone calls and allow him to focus on subject work. I had previously talked with C.R.W. about the Assignment. Just let us know to remind him and give him positives about Assignments. We need to work together utilizing the best possible practices and I believe that the emailing and assignment book, along with counselor, teacher, and principal reminders will bring about positive results.
>
> Bob

After receiving a response from Walsh, in which he complained that his access to C.R.W. was being blocked, Dr. Krantz wrote:

> It is never my intent to block your access to your son, but I must keep instructional time as a priority for the sake of your son and our responsibility from a parent and principal standpoint. I have continued to monitor the team's approach with students. It is important that we continue a positive working relationship to keep [C.R.W.] on track, but also make him responsible.
>
> Bob

listening in, but this is speculation.  Walsh provided no evidence that would create a reasonable inference that Dr. Krantz could not have learned of the outline and the extra credit work by means other than intercepting the call.  Similarly, nothing in C.R.W.'s affidavit supports directly or circumstantially Walsh's allegation that Dr. Krantz listened in on another telephone during C.R.W.'s conversation with Walsh.[9]

Inasmuch as Dr. Krantz did not "intercept" the telephone call, logically he could not have "disclosed" the content of the call to a third person, or "used" any information disclosed during the call for any purpose, 18 U.S.C. § 2511(1)(c), (d).  Accordingly, Dr. Krantz and the School District were entitled to summary judgment on the Federal Wiretapping Act claim.  The provisions of Pennsylvania's Wiretap Act applicable to this case are substantially the same as the provisions of the Federal Wiretapping Act.  The state wiretap act is interpreted in the same way as the federal Act.  See Fraser v. Nationwide Mut. Ins. Co., 352 F.3d 107, 113 n.6 (3d Cir. 2003).  Accordingly, Dr. Krantz also was entitled to summary judgment on Walsh's individual claim of a violation of the Pennsylvania Wiretapping Act.

To establish a section 1983 claim, a plaintiff must demonstrate a deprivation of a

---

[9] In his affidavit, C.R.W. stated: "During 29 March 06, early in the day, Dr. Krantz, the principal of the Dallastown Middle School, approached me and informed me my dad had called to remind me to turn in my outline to Mr. Hartman.  Later that same day, my dad called and reminded me that I also had to see Mrs. Young during 9th period to complete my extra credit project for the 3rd Marking Period.  I completed both tasks.  Dr. Krantz did not speak to me again that day."

"right secured by the Constitution and the laws of the United States ... by a person acting under color of law." See Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). The Fourth Amendment, upon which Walsh's individual section 1983 claim and claim on behalf of C.R.W. are based, prohibits unreasonable searches and seizures. Soldal v. Cook County, Ill., 506 U.S. 56, 62 (1992). Application of the Fourth Amendment depends on whether the person invoking it can claim a reasonable expectation of privacy. Smith v. Maryland, 442 U.S. 735, 740 (1979). Here, Walsh did not provide evidence that either he or C.R.W. had a reasonable expectation of privacy in the second telephone call. The call was made through a telephone line to the Middle School, it was taken in a school administrator's office, and there is no evidence that either Walsh or C.R.W. asked for privacy. What a person knowingly exposes to the public is not entitled to Fourth Amendment protection. See Katz v. United States, 389 U.S. 347, 351 (1967). The District Court properly determined that the defendants were entitled to summary judgment on the Fourth Amendment claim.

Turning to the remaining issues, during the time when discovery was ongoing Walsh filed a motion to recuse, which the District Court denied. After the District Court denied appeals from the Magistrate Judge's orders resolving discovery disputes, Walsh filed a second motion for recusal. That motion was denied. We conclude that the District Court properly declined to recuse. We have reviewed the entire record and there is no basis for reasonably questioning the District Court's impartiality, 28 U.S.C. § 455(a). See

12

Liteky v. United States, 510 U.S. 540, 550-51 (1994) (judge is not recusable for bias or prejudice where his knowledge and negative opinion were acquired during the course of proceedings). See also Securacomm Consulting, Inc. v. Securacom, Inc., 224 F.3d 273, 278 (3d Cir. 2000) (party's displeasure with legal rulings does not form an adequate basis for recusal). With respect to 28 U.S.C. § 144, Walsh's affidavit does not evince bias that is personal in nature, see United States v. Thompson, 483 F.2d 527, 528 (3d Cir. 1973).[10]

Walsh contends that his right to discovery was improperly restricted. He states, for example, that the roster of administrative personnel was withheld from him until the last day of discovery, see Appellant's Brief, at 24. Walsh filed a number of motions for reconsideration of various orders resolving discovery matters, culminating in the District Court's March 20, 2009 order, in which the court stated that it would not consider any further motions requesting that it reconsider its earlier decisions. We conclude that the District Court did not abuse its discretion in the management of discovery in this case, see In re: Fine Paper Antitrust Litig., 685 F.2d 810, 817 (3d Cir. 1982) (matters of docket control and conduct of discovery are committed to the sound discretion of the district court). The record reflects that Walsh was given ample time to conduct discovery, he did

---

[10] In his reply brief Walsh states that the District Court's negative view of him can be traced to an earlier lawsuit, Walsh v. United States, D.C. Civ. No. 05-cv-00818, but the District Court was thorough in its approach to the allegations in the instant lawsuit, and did not base its judgment on the lack of merit in the prior case. See Walsh v. United States, 328 Fed. Appx. 806 (3d Cir. 2009) (affirming grant of summary judgment and holding that former marine's conclusory accusations of general's involvement in home invasions were insufficient to establish liability under Fourth and Fifth Amendments).

in fact depose several witnesses and submit an expert report, and he has not pointed to any evidence that would have affected the outcome of the trial under the governing law, Anderson, 477 U.S. at 248, had discovery been extended. Cf. Fed. R. Civ. Pro. 56(f) ("If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: *** (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken").

We conclude that leave to file a second amended complaint to add additional substantive due process allegations – that Stone attempted to block S.J.W. from being kept at grade level for math, that she recommended that S.J.W. be held below grade level, that Stone and Anderson refused to discuss that recommendation, that Cathcart was the driving force behind the actions regarding S.J.W. – properly was denied because the conduct alleged does not shock the conscience. See Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000) (leave to amend may be denied if amendment would be futile). Walsh also alleged that Keeney, a secretary, was the "unknown Dallastown staff member," and he sought to amend his complaint accordingly. This request also properly was denied because an amendment to name Keeney as the unknown Dallastown staff member would have been futile. Walsh's evidence of a federal or state wiretap violation or Fourth Amendment violation was insufficient to withstand a motion for summary judgment

against anyone, including Keeney.[11]

Last, we agree with the District Court, for the reasons given by the District Court, that Walsh's amended complaint failed to state a plausible section 1981 claim, claim for breach of fiduciary trust, or claim for intentional and negligent infliction of emotional distress sufficient to survive a Rule 12(b)(6) motion to dismiss. See Iqbal, 129 S. Ct. at 1949.

For the foregoing reasons we will affirm all orders of the District Court. The appellant's motion to vacate the Clerk's Order of May 18, 2010 is denied.

---

[11] The District Court *sua sponte* granted summary judgment in favor of the "unknown Dallastown staff member."