F. W. Wise Company, Inc. *v.* Beech Creek
Railroad Company et al., Appellants.

Argued January 9, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Paul Silberblatt,* with him *Bell, Silberblatt & Swoope,* for appellants.

*William W. Litke,* with him *John Gates,* and *Litke, Gettig, Flood & Geiser,* for appellee.

OPINION BY MR. JUSTICE POMEROY, March 20, 1970:

Plaintiff-appellee (Wise) sued the three railroad company defendants, all part of The New York Central System (herein collectively referred to as "the Railroad") jointly for damages for breach of an alleged contract to sell to Wise for the sum of $15,000 certain real estate owned by the Railroad in the Borough of Clearfield, Pennsylvania, and not needed for railroad purposes ("the property"). The defenses of the Railroad were that no contract had been entered into; that, if there were a contract, it was made by agents who had no authority to bind the Railroad; and that, assuming an otherwise valid contract, it did not meet the requirements of the Statute of Frauds. These matters were left to the jury by the trial judge, who overruled the Railroad's motions for compulsory nonsuit and for binding instructions. The jury returned a verdict for plaintiff in the amount of $23,500. The Railroad's motion for a new trial was refused, and judg-

ment was entered on the verdict. This appeal followed. We affirm.

At the outset we are met with the problem of what questions are properly before us on this appeal. The Statement of Questions Involved, as contained in appellants' brief, is reproduced in the margin.[1]

Question No. (1) is apparently based on the first reason given in the motion for a new trial, viz., "The court erred in refusing to grant the Railroad's motion for nonsuit at the conclusion of plaintiff's case." We hold that the refusal of a motion for nonsuit is not a valid reason for a new trial in this or any case where the defendant offers testimony. A defendant's right to request a nonsuit is based on his offering no evidence, and the court cannot grant a nonsuit after the introduction of evidence by the defendant. Act of March 11, 1875, P. L. 6, §1, 12 P.S. §645; *Highland Tank and Manufacturing Company v. Duerr*, 423 Pa. 487, 225 A. 2d 83 (1966); *Jordan v. Sun Life Assurance*

---

[1]"STATEMENT OF QUESTIONS INVOLVED

"(1) Was a jury question presented by the appellee's case, in chief?

"(2) If a jury question was presented in the appellee's case, was it a prejudicial error for the Court to admit the inter-office and inter-departmental communications of the appellants for the purpose of showing apparent authority on the part of appellants' employees?

"(3) If a jury question was presented in the appellee's case, was it a prejudicial error for the court to admit into evidence the inter-office and inter-departmental communications as tending to show appellants' interpretation of the effect of the acts of its employees?

"(4) Was it a prejudicial error for the court to admit appellee's Exhibits 13 and 12 on the sole ground that such exhibits were retained in the records of the railroad company?

"(5) Does the attempt of the appellee to show a contract to sell land on the basis of apparent authority conflict with the Pennsylvania Statute of Frauds, which prohibits a contract to sell land except in writing signed by the owner or his agent authorized in writing?"

*Company of Canada*, 366 Pa. 495, 500, 77 A. 2d 631 (1951). Cf. *Kukich v. Serbian Eastern Orthodox Church of Pittsburgh*, 415 Pa. 28, 202 A. 2d 77 (1964). If a nonsuit motion made at the close of the plaintiff's case is refused by the trial judge, the defendant has an option either to rest on that motion and present no evidence, or to put in a case. If the defendant elects to proceed, as did the Railroad in the present case, the nonsuit stage is over, and the correctness of the court's ruling is moot.[2] Whether Wise's case was adequate for submission to the jury is therefore not a question properly before us on this appeal.

Question No. (5) of the Statement raises the question of the Statute of Frauds, which the Railroad asserted as a defense in its answer and again in its points for charge. Unfortunately for the Railroad, however, the defense was not raised in the motion for new trial. No error was claimed with regard to the court's rulings on the points for charge. The new trial motion states (point 4) that "[t]he court erred in its charge to the jury", but this is obviously too general to merit attention. The subject of the Statute of Frauds is not mentioned in the lower court's opinion, and presumably was not argued before it. This defense of the Statute not having been properly preserved by the Railroad in

---

[2] The new trial motion of the Railroad also assigned as error the refusal of the Railroad's point for binding instructions. This is not a ground for a new trial, but only for judgment *non obstante veredicto*. Act of April 22, 1905, P. L. 286, §1, as amended, 12 P.S. §681. These are alternative motions seeking mutually exclusive remedies, and it is not proper to join them as one motion. *Manone v. Culp, Exr.*, 350 Pa. 319, 39 A. 2d 1 (1944); *Campdon v. Continental Assurance Co.*, 305 Pa. 253, 157 Atl. 464 (1931). Here the Railroad filed no motion for judgment n.o.v. and is not entitled to have the record searched as if it had. We may say in passing, however, that our review of the record convinces us that the court was right in allowing the jury to pass on the questions of contract, agency, and authority.

the court below, we conclude that the issue is not properly before us on this appeal.

Questions (2), (3), and (4) of the Statement are properly before us.[3] We therefore address ourselves to the question whether or not certain intra-company Railroad documents, plus a few letters between the Railroad and third persons, were improperly and prejudicially admitted into evidence. Some factual background is necessary to illuminate the setting in which the exhibits were introduced.

The undisputed evidence (not including the challenged documents) showed protracted negotiations, starting early in 1955, for the sale by the Railroad of certain land to Wise, who planned to erect on the property a bulk storage plant for propane gas, which it intended to bring in by rail over a private side track on the property. All the terms of the sale, including the purchase price of $15,000, were apparently agreed upon by Wise and the Railroad personnel with whom he dealt, and were set forth in a written offer signed by Wise on a form submitted by the Railroad. Wise's check for $1,500 "earnest money", being 1/10 of the proposed purchase price, accompanied the offer and was deposited by the Railroad. The Railroad made no formal reply to the offer and no deed was ever tendered. In August, 1958, Mr. A. C. Fullerton, the Railroad's Real Estate Manager, Eastern Section, wrote to Wise stating, in effect, that his offer was inadequate and could not be further considered. At a later date the hand money was returned. In the two and a half years which intervened between the submission of the offer and its attempted rejection, several events took place:

1. A side track agreement contemplated by the parties in connection with the land sale was executed

---

[3] Questions (2) and (3), however, cannot be conditioned on whether a jury question was or was not made out in Wise's case, as the phraseology would suggest.

by both parties. Attached to it was a plan which identified "Land to be sold to F. W. Wise Gas Co., Inc." and signed by three officials of the Railroad. (This was cancelled concurrently with the rejection of the offer.)

2. Mr. Wise was consulted by the Railroad as to whether a street adjacent to the property should be deeded to the Borough of Clearfield or retained by the Railroad, maintenance costs to be divided with Wise. Preferring the conveyance to the Borough, Wise, at the request of the Railroad Real Estate Agent, was in touch with the Borough Council President, the Borough Engineer, the Street Commissioner and the Solicitor, with the result that the Council did adopt an ordinance agreeing to accept dedication.

3. During this period, according to Mr. Wise, Railroad officials would stop at his office periodically "to see how things were progressing and how soon we could start construction and how soon they could expect some revenue from our company." Also, Wise testified, Mr. Fullerton called him about the transaction on different occasions, and he called on Fullerton in New York.

At trial, officers of the Railroad testified as to the formal procedures employed by the Railroad during the relevant period in effecting a sale of real estate owned by the corporation. In general, the Land and Tax Agent (later called Real Estate Agent), upon favorable review of a firm offer from a prospective purchaser, submitted the proposal to other interested departments, primarily the Operating Department, Engineering Department and Freight Sales Department. If these departments had no objections to the transaction, the agent then referred the matter to the Vice President in charge of the Railroad's real estate department. With his concurrence, the proposal went to the Board of Directors for authorization, which would be granted as a matter of course. Without action by the Board

of Directors, no railroad official enjoyed the express power to complete a sale of any railroad property. Wise was never informed by the Railroad that this was the case, or that the sale had to be approved by the Board of Directors.

.In this instance, the Real Estate Department never submitted the purchase offer of F. W. Wise Gas Company, Inc. to the New York Central Board of Directors. Consequently, the Board never acted to authorize a sale of the property to Wise. The records of the Railroad show, however, that on September 9, 1958, the Board of Directors formally approved the sale of the disputed real estate to "Harold D. Woolridge, or his nominee."

In pretrial discovery proceedings, Wise came upon various letters and other inter-office and inter-departmental correspondence within the Railroad organization referring to the Wise-Railroad transaction. A number of these were introduced into evidence at trial. As stated above, the Railroad strenuously argues that this was error. It contends that since these documents were entirely intra-mural, or in any event not communicated to Wise, they could not be the basis of the conclusion that the offer was accepted by the Railroad, or the corollary conclusion that the Railroad agents had apparent authority to accept the offer, either by word or deed. An acceptance of an offer, says the appellant, must normally be communicated to the offeror, *Bershad v. Chester Nest No. 1228*, 364 Pa. 393, 72 A. 2d 116 (1950); and *Morganstern Electric Co. v. Coraopolis Borough*, 326 Pa. 154, 191 Atl. 603 (1937), and "apparent authority" must by definition be made apparent. *Jennings v. Pittsburgh Mercantile Co.*, 414 Pa. 641, 645, 202 A. 2d 51 (1964), *Simon v. H. K. Porter Co.*, 407 Pa. 359, 180 A. 2d 227 (1962). The argument continues that the contested exhibits, being messages within the Railroad bureaucracy, and unknown to Wise before the litiga-

tion, could not be used to prove these necessarily overt aspects of contract-making.

Accepting for the purposes of this opinion the validity of this position, it does not follow that the writings in dispute were not otherwise admissible. The rationale of their introduction into evidence was stated by Judge CHERRY in his charge to the jury as follows: "In and of themselves, the interoffice communications do not make the contract—they do not; but they serve for the purposes that I have already indicated to you, to establish, number one, in your minds the credibility, help establish it, the credibility that you wish to attach to the testimony of any particular witness. Number two, to determine, and help you determine how these parties treated their acts and their words in dealing with each other; how they interpreted them and how they felt they were affected by them." We are of the opinion that admission of the documents for the limited purposes indicated in the charge was not error.

We will not burden this opinion with a detailed description of the 16 papers in the "intra-mural" category, and 6 others which passed between the Railroad and third persons, but some indication of their contents is necessary to illustrate the evidentiary problem.

Exhibits 12 and 13, chronologically the first letters complained of, were letters from the District Freight Sales Manager and the Division Superintendent of the Railroad, respectively, to Mr. Fullerton in 1955 concerning the proposed sale to Mr. Wise. Wise knew that Fullerton had written to these persons requesting their concurrence before he prepared a formal offer to purchase; when the offer form was submitted soon thereafter, he could reasonably have inferred such approval by these officials representing the sales and operating departments of the Railroad. The letters were thus merely confirmatory of the approval, and by them-

selves did not prove a contract. Their admission into evidence was not prejudicial.[4]

As to the other contested documents, it is enough to relate that they reveal that, at various stages of the relationship with Wise, the Railroad personnel felt committed to the consummation of the sale transaction. Thus, J. O. Boisi, the Director of Real Estate (the top echelon of management, reporting directly to the President), on August 30, 1957, wrote to an inquiring possible purchaser, ". . . negotiations for the sale of this property were concluded several months ago, so that we are not in a position to negotiate with your bank with respect thereto."

On September 4, 1957, Mr. Boisi sent a copy of the August 30 letter to a Mr. Clothier, an officer in the Real Estate Department, junior to Mr. Boisi, who had the title "Real Estate Agent", and by a separate note advised him: "Negotiations have already been concluded for the sale of this property to F. W. Wise Gas Company, Inc. of Clearfield, Pa. . . . It also involves dedication to the Borough of a portion of our holdings for street purposes." A week later Mr. Boisi wrote again to Mr. Clothier, as follows: "At Clearfield, Pennsylvania, we have completed negotiations for the conveyance of a parcel of land to F. W. Wise Gas Company, Inc. Preparation of a formal deed has been delayed pending agreement with the Borough for additional lands to be used for street purposes, abutting the proposed conveyance on the north and west." On November 18, 1957, Mr. Fullerton, a key figure throughout the transaction, and by this time second in command to Mr. Boisi for the eastern area, wrote to Mr.

---

[4] Clearly the mere fact that the letters were still retained by the Railroad as part of its records involved in this transaction was not a reason for their admission into evidence, but the court's advancement of this inadequate reason was not prejudicial if the exhibits were otherwise admissible.

Clothier as follows: "In your letter of November 7, you cite an interest in purchasing by Woolridge Coal Company. I have discussed this possibility with Industrial Engineer Marshall and he concurs with me that the sale to F. W. Wise Gas Company has progressed too far to be rescinded, with which A. R. Lancto [District Freight Sales Manager] also agrees." A similar letter went from Fullerton to Clothier in February, 1958, which refers to "a definite commitment" having been made to the Gas Company. Clothier then advised Woolridge that because of this the Railroad could not give favorable consideration to its offer.

In determining the admissibility of these letters, along with others less significant, the fact that Mr. Fullerton, who was Eastern Real Estate Manager of the Railroad and who had been with the Real Estate Department since 1928, was a principal witness at the trial is noteworthy. First called by Wise as on cross-examination, he was also called by the Railroad. It was he who in 1955 had the first dealings with Wise and it was he who, in 1958, advised Wise that the deal was off. He testified extensively to the effect that no contract had been entered into with Wise and that no authority existed in any Railroad officer or employe to bind the company. Clearly, his testimony and the weight to be given it were important. His credibility and good faith, and that of the other two Railroad officers who testified (by deposition) was in issue. The letters were not only corroborative of Wise's position of contract acceptance by authorized personnel; they were also in the category of prior inconsistent statements, if not admissions by the Railroad, and were admissible at the least for impeachment purposes, if not for the truth of their contents. *Gougher v. Hansler,* 388 Pa. 160, 166, 130 A. 2d 150 (1957). See I Henry, *Pennsylvania Evidence,* §71, 2 id. §801; V Wigmore on *Evidence,* 3d Ed. §§1017, 1041; 1 Morgan, *Basic Prob-*

*lems of Evidence,* 69 (ALI, 1954). This was the rationale of their introduction into evidence. No error was thereby committed.

Judgment affirmed.

Mr. Justice ROBERTS concurs in result.