**NORTHEAST FENCE & IRON WORKS, INC., Appellee**

v.

**MURPHY QUIGLEY CO., INC., Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 31, 2006.

Filed Sept. 18, 2007.

Rene D. Quinlan, Philadelphia, for appellant.

Bruce K. Warren, Jr., Philadelphia, for appellee.

BEFORE: BENDER and BOWES, JJ. and McEWEN, P.J.E.

OPINION BY BOWES, J.:

¶ 1 Murphy Quigley Co., Inc. appeals the grant of relief to Appellee, Northeast Fence & Iron Works, Inc., based on a claim of unjust enrichment. We affirm.

¶ 2 Appellee instituted this action on May 21, 2004, seeking recovery against Appellant based upon breach of contract, unjust enrichment, and violation of the Contractor and Subcontractor Payment Act, 73 P.S. § 501 *et seq.* The matter proceeded to a nonjury trial, where these facts were adduced. In 2003, Appellant was general contractor for a construction project at Bucks County Correctional Facility. The project consisted of modifications to perimeter security through installation of perimeter fencing, creation of seven fence-enclosed recreational yards for the inmates, demolition work, and the upgrading of some aspects of the security

system. The first two components of the project comprised a significant amount of the work associated with it. The contract was valued at $713,000. Eagle Fence was awarded the original contract for the fencing work. After completing approximately ten to fifteen percent of that work, Eagle Fence left the worksite, apparently due to nonpayment.

¶ 3 In November 2003, Appellant obtained estimates for both completion of the fencing and repair of some of Eagle Fence's work, which was not in compliance with contract specifications between the prison and Appellant. Appellee was one of the companies contacted in that regard and was hired to complete the job. Conflicting testimony was presented, however, on the issue of whether a verbal contract for the work was reached between Appellant and Appellee.

¶ 4 There was no dispute regarding the pricing of the perimeter fencing; both parties acknowledged that they had agreed that that work would be completed for a fixed amount of $26,500. Raymond Longstreath, Appellee's owner, testified that the fixed price for that work was acceptable because the perimeter fence was on a level piece of ground, some of the materials were in place, and he was able to ascertain exactly what was needed in order to complete the job. However, the parties differed as to the agreed price for the installation of the fencing surrounding the recreational yards.

¶ 5 Dan O'Connell, project manager for Appellant, testified that the proposal for the seven recreation yards was $3,500 per day for two iron workers, two laborers, and two trucks with four to five days estimated work on each yard. Although believing this estimate to be excessive, Mr. O'Connell nevertheless accepted it, concluding that the maximum for each yard would be $17,500 and overall $122,500.

Adding $26,500 for the perimeter fencing, Mr. O'Connell calculated that the subcontract with Appellee would not exceed $149,000 and testified specifically that he understood that the subcontract would be limited to that amount.

¶ 6 Mr. Longstreath, who considered the contract an emergency contract due to Eagle Fence's abandonment of the work coupled with Appellant's contractual timing obligations with the prison, contested Mr. O'Connell's recollection of the agreement regarding fencing for the recreational yards. He stated that when he reviewed the site for the yards, it was in disarray and muddy, which created construction difficulties, and he was unable to determine the exact amount of work needed to complete that aspect of the project. He testified that he presented a per diem proposal of $3,500 with no maximum and that this bid was accepted by Appellant.

¶ 7 Based on the discrepancy over the contract price for the recreational yards, the trial court determined that there was no meeting of the minds on the overall contract cost and that Appellee could not recover on a breach of contract theory. It did find in favor of Appellee, and awarded $114,264.06 in damages based on the unjust enrichment cause of action. The following evidence was considered in the calculation of the damage award. Diane Charlton, bookkeeper for Appellee, testified that her outstanding invoices on the project indicated that Appellant owed Appellee $134,428.30 when Appellee left the jobsite. She also testified that she was promised payment by Mr. O'Connell and Appellant's owner and that in her conversations with those men, no issues about the quality of the work or the credentials of Appellee's workers were raised. The trial court accepted this testimony as credible.

¶ 8 Appellant presented countervailing evidence on damages. Mr. O'Connell

maintained that some invoices were not paid because Appellee was using nonunion workers in violation of Appellant's contract with the prison and that after Appellee left the jobsite, Appellant had to expend $26,220 to correct defective work and $52,014.22 to complete the job. The trial court did not credit this evidence, noting that Mr. O'Connell's "testimony regarding the sums allegedly expended by Murphy Quigley to correct work and to complete the job were not accepted by the court and appeared to be created solely for litigation." Trial Court Opinion, 5/12/06, at 8. The court calculated the value of Appellee's unpaid work at $114,264.06, which represented $134,428.30, the amount owed on the invoices, less the fifteen percent that Eagle Fence had performed on the project.

■ ¶ 9 On appeal, Appellant raises a number of contentions, some of which are related.[1] We will consolidate resolution of the connected legal questions presented. One of Appellant's positions, repeated throughout its brief, *see* appellant's brief at 20, 24, 26, is that Appellee did not plead a theory of *quantum meruit.* This contention is incorrect. Count one of the complaint was for breach of contract, and count two pertained to the Contractor and Subcontractor Payment Act, 73 P.S. § 501 *et seq.* Count three was titled "unjust enrichment," and after incorporating the previous paragraphs, indicated that Appellant was "unjustly enriched at plaintiff's expense." Complaint, 5/21/04, at ¶¶ 33–37. Unjust enrichment is a synonym for *quantum meruit. See Mitchell v. Moore,* 729

A.2d 1200, 1202 n. 2 (Pa.Super.1999) ("cause of action in quasi-contract for *quantum meruit,* a form of restitution, is made out where one person has been unjustly enriched at the expense of another"). We therefore reject this contention.

■ ¶ 10 Appellant also avers that the court erroneously denied its motion *in limine* for "Unjust Enrichment." Appellant's brief at 14. Appellant posits that "Northeast Fence was unprepared to introduce any evidence of unjust enrichment; rather, Northeast Fence would only introduce evidence of a purported written agreement, which would preclude any recovery under the theory of unjust enrichment." *Id.* (citations to record omitted). In making this argument, Appellant misperceives the nature and purpose of a motion *in limine.* A motion *in limine* is a "device for obtaining rulings on the admissibility of evidence prior to trial." Packel and Poulin, Pennsylvania Evidence, § 103.3 at 12; *see Commonwealth v. Gordon,* 543 Pa. 513, 517, 673 A.2d 866, 868 (1996) (motion *in limine* is functionally equivalent to motion to suppress as it seeks to obtain rulings on admission or exclusion of evidence). Herein, Appellant's "motion *in limine*" did not seek to prevent or permit the admission of evidence at trial. Instead, Appellant was arguing that Appellee's evidence was going to prevent recovery under an unjust enrichment cause of action. This type of challenge is properly made after presentation of the evidence, by means of a compulsory nonsuit, which brings us to Appellant's second contention.

1. Appellee moved to quash this appeal because the appeal was filed after denial of post-trial motions but before judgment was entered. Since judgment subsequently was entered on the verdict, the appeal will not be quashed. Pa.R.A.P. 905 ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable

order shall be treated as filed after such entry and on the day thereof."); *see also Ruthrauff, Inc. v. Ravin, Inc.,* 914 A.2d 880, 887 n. 6 (Pa.Super.2006). Appellee also claims that Appellant's brief was untimely, but Appellant's brief was timely filed according to a July 7, 2006 order entered by this Court. Appellee's motion is therefore denied.

¶ 11 Appellant next avers that the trial court erred in failing to grant Appellant's motion for compulsory nonsuit because there was no evidence of enrichment in this case. We observe that Appellee presented evidence that both a contract had been breached and that Appellee had performed services at Appellant's request and for which it had not been paid. Once that evidence was presented, Appellant moved for a compulsory nonsuit, which was denied. Appellant then presented evidence both contesting that a contract had been reached and the value of the work performed by Appellee. Once Appellant chose to present its evidence, the trial court's ruling on the compulsory nonsuit was rendered moot. As we stated in *Burns v. City of Philadelphia*, 350 Pa.Super. 615, 504 A.2d 1321, 1325 (1986):

> If the defendant elects to proceed, the non-suit stage is over and the correctness of the court's ruling is moot. *F.W. Wise Gas Co., Inc. v. Beech Creek R.R. Co.*, 437 Pa. 389, 392, 263 A.2d 313, 315 (1970). [Defendant in this case] elected to proceed and placed its entire case into evidence after [plaintiffs] rested. Therefore, we do not rule on the correctness of the denial of the motion for compulsory non-suit as such.

¶ 12 Nevertheless, Appellant reasserts its arguments regarding the directed verdict and nonsuit in support of its position that it was entitled to a directed verdict and judgment notwithstanding the verdict. Therefore, we now consider the merits of Appellant's claims in their proper context, as a request for judgment n.o.v.[2] *Burns, supra.*

Our Supreme Court has stated that the standard of review for an order "granting or denying judgment notwithstanding the verdict is whether there was sufficient competent evidence to sustain the verdict." *Brown v. Progressive Insurance Co.*, 860 A.2d 493, 497 (Pa.Super.2004) (citing *The Birth Center v. The St. Paul Cos.*, 567 Pa. 386, 397, 787 A.2d 376, 383 (2001)). We must view the evidence in the light most favorable to the verdict winner and give him or her the benefit of every reasonable inference arising therefrom while rejecting all unfavorable testimony and inferences. *Birth Center*, 567 Pa. at 397, 787 A.2d at 383. Furthermore, judgment nov should be entered only in a clear case, where the evidence is such that no reasonable minds could disagree that the moving party is entitled to relief. Review of the denial of judgment nov has two parts, one factual and one legal:

> Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded evidence at trial, we will not substitute our judgment for that of the finder of fact.

*Van Zandt v. Holy Redeemer Hosp.*, 806 A.2d 879, 886 (Pa.Super.2002) (citation omitted), appeal denied, 573 Pa. 686, 823 A.2d 145 (2003).

*Condio v. Erie Insurance Exchange*, 899 A.2d 1136, 1141 (Pa.Super.2006). We now outline the elements of an unjust enrichment claim:

> A quasi-contract imposes a duty, not as a result of any agreement, whether express or implied, but in spite of the absence of an agreement, when one party receives unjust enrichment at the expense of another. In determining if the doctrine applies, we focus not on the intention of the parties, but rather on whether the defendant has been unjustly

---

**2.** Since we conclude that Appellant was not entitled to judgment n.o.v., we need not consider its position that it was entitled to a directed verdict.

enriched. The elements of unjust enrichment are "benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." The most significant element of the doctrine is whether the enrichment of the defendant is unjust; the doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff. Where unjust enrichment is found, the law implies a quasi-contract which requires the defendant to pay to plaintiff the value of the benefit conferred. In other words, the defendant makes restitution to the plaintiff in *quantum meruit.*

*Lackner v. Glosser,* 892 A.2d 21, 34 (Pa.Super.2006) (quoting *AmeriPro Search, Inc. v. Fleming Steel Company,* 787 A.2d 988, 991 (Pa.Super.2001)). "By its nature, the doctrine of quasi-contract, or unjust enrichment, is inapplicable where a written or express contract exists." *Id.*

¶ 13 Appellant first suggests that the concept of unjust enrichment is not applicable in this case because the relationship between the parties was founded on a contract. A cause of action for unjust enrichment arises only when a transaction is not subject to a written or express contract. *Villoresi v. Femminella,* 856 A.2d 78, 84 (Pa.Super.2004). In this case, there was no written contract, and there also was a conflict over the contractual price during the verbal exchange. Both parties agreed on the price of the perimeter fencing and that the recreational yard work would be performed at a per diem rate of $3,500. However, Appellant claimed that there was a contractual maximum cost while Appellee denied this claim.

¶ 14 Thus, the evidence established the existence of a dispute over the contract price, an essential term of a contact, *Kuss Mach. Tool & Die Co. v. El-Tronics, Inc.,* 393 Pa. 353, 143 A.2d 38 (1958), and supported the trial court's refusal to find the existence of an express contract. If no express contract exists between the parties due to the absence of an agreed-upon contract price, a plaintiff may recover under a quasi-contract theory of unjust enrichment. *Id.; see also Temple University Hospital, Inc. v. Healthcare Mgmt. Alternatives, Inc.,* 832 A.2d 501, 507 (Pa.Super.2003). Moreover, the plaintiff can recover under this quasi-contractual theory even when the plaintiff has been partially paid if the benefit conferred on the defendant is greater than the value paid to the plaintiff. *Temple University Hospital Inc., supra.* Indeed, we recently held that a subcontractor can recover based upon unjust enrichment when it performed work outside the coverage of the parties' contractual provisions. *Ruthrauff, Inc. v. Ravin, Inc.,* 914 A.2d 880 (Pa.Super.2006).

¶ 15 Appellant also argues that Appellee's evidence failed to establish the element of enrichment for purposes of the unjust enrichment claim. In this regard, Appellant maintains that in order to recover under this theory, it was not sufficient for Appellee to produce unpaid invoices; rather, Appellee was required to prove that Appellant was paid by the landowner. In support of this position that Appellee must establish that it was compensated by the prison for the fencing work, Appellant relies upon *D.A. Hill Co. v. Clevetrust Realty Investors,* 524 Pa. 425, 573 A.2d 1005 (1990), *Meehan v. Cheltenham Township,* 410 Pa. 446, 189 A.2d 593 (1963), and *Ravin, Inc. v. First City Co.,* 692 A.2d 577 (Pa.Super.1997).

¶ 16 In *D.A. Hill Co.*, a construction lender foreclosed on a parcel of partially-developed property after the developer defaulted on the lender's construction loan. Unpaid subcontractors instituted an unjust enrichment action against the lender claiming that the lender should be required to satisfy their outstanding invoices because the lender had been unjustly enriched by obtaining possession of the project for less than the project was worth. The lender defended on the ground that it had not been enriched because it had paid the developer various amounts, those sums had not been remitted to the subcontractors, and the subcontractors had failed to acknowledge the payouts under the loan that the lender had made to the developer prior to its acquisition of the subject property. The Supreme Court accepted the lender's position, stating:

> [N]either the amount of the invoices nor the appraisal established the value of the benefit. conferred, for the invoices were irrelevant to the question of enrichment, and the subcontractors failed to establish that the value of the improved property at the time of foreclosure **exceeded amounts already advanced by [lender] on the construction loan.** Having failed to establish the existence of a benefit, the subcontractors could not recover on an unjust enrichment theory.

*Id.* at 433–34, 573 A.2d at 1010 (emphasis added).

¶ 17 In *Meehan*, the Supreme Court similarly had declined to allow an award under ·a theory of unjust enrichment. In that case, the defendant was a township that became the owner by dedication of streets that the plaintiff, as subcontractor, had improved by installing sewers and paving. The developer for the project had become insolvent before paying the subcontractor for its labor. The Court declined to allow recovery against the township on two grounds. First, it noted that there was no evidence of benefit because "the cost of maintaining and repairing" the streets might "offset any [tax] revenues" obtained from the roads. *Meehan, supra* at 450, 189 A.2d at 595. In addition, the Court noted that there was no injustice involved under the circumstances since the township had not misled the subcontractor in connection with the road improvements.

¶ 18 *Ravin* is analogous to *Meehan.* Therein, the plaintiff sought to recover for improvements to a retail space. We concluded that the plaintiff could not recover since the defendant, the building owner, had not requested the plaintiff's services and had not misled the plaintiff and therefore was not enriched unjustly. We also noted that the plaintiff's unpaid bill, standing alone, could not serve as a basis for finding enrichment.

¶ 19 Unlike the factual scenarios at issue in *D.A. Hill Co., Meehan,* and *Ravin,* Appellant recruited Appellee to install the fencing. After the original subcontractor responsible for the work performed by Appellee left the worksite, Appellee was engaged to perform that work on an emergency basis in the face of impending contractual deadlines. Unlike the landowner or lender in the aforementioned cases, Appellant was the general contractor for the construction project at issue herein. Appellee submitted evidence that it performed approximately $134,000 worth of work for which it had not been paid by Appellant. This work clearly benefited Appellant because it satisfied Appellant's contractual obligations to a third party. Appellant thereafter accepted and retained Appellee's work.[3]

---

3. As noted above, the trial court disbelieved

Mr. O'Connell's testimony that Appellant per-

¶ 20 Contrary to Appellant's position, Appellee was not required to prove as an element of unjust enrichment that Appellant was paid on its contract with the prison. The benefit to Appellant was the performance of work at Appellant's request in order to satisfy Appellant's contractual obligation to the prison. Once a benefit is conferred and retained under circumstances where it would be unjust to deny payment, the evidence is sufficient to sustain a verdict based upon this cause of action. It was incumbent upon Appellant to enforce its contractual right to payment, a contractual right created by Appellee's services, from the landowner.

¶ 21 Indeed, it is noteworthy that under the case law relied upon by Appellant, Appellee could not recover for its labor and costs against the landowner. Moreover, we have recently observed that *D.A. Hill Co.* does not preclude a subcontractor from recovering for unjust enrichment against a contractor. *Ruthrauff, Inc. v. Ravin, Inc., supra.*

¶ 22 Appellant also alleges that Appellee never proved the value of the fencing because it only submitted invoices, which Appellant asserts was insufficient proof under the trio of cases discussed above. Appellant's brief at 21–22. Appellant presents selective and out-of-context quotes from those decisions. Our review of those cases establishes that they do not stand for the proposition that a subcontractor cannot establish the value of a benefit conferred on a contractor through the submission of unpaid invoices. We therefore reject this averment.

¶ 23 Appellant also maintains that the trial court should have accepted its unrebutted evidence that the value of the fencing installed by Appellee was about $40,000. Specifically, Appellant contends

formed approximately $26,000 in repairs to

that it presented unrebutted evidence that it paid "$75,818.82 to Northeast Fence … and that it incurred $26,220.14 in damages to repair Northeast Fence's defective work," and in light of this evidence, the damage award of the court cannot be upheld. Appellant's brief at 25.

¶ 24 The trial court, sitting as factfinder, was free to reject Appellant's evidence of value conferred as not credible. *See Condio v. Erie Insurance Exchange, supra* (credibility determinations of trial court sitting as factfinder are binding on appellate court). The trial court herein specifically concluded that Appellant's evidence that it had expended money to repair Appellee's work was not worthy of belief. Furthermore, Appellant's evidence of value was indeed rebutted by Appellee, who submitted evidence that the value conferred far exceeded the amount paid. The invoices submitted by Appellee demonstrated that the amount owed, after credit for the amount paid by Appellant, was approximately $134,000. Thus, there was sufficient evidentiary support for the $114,000 damage award rendered by the trial court.

¶ 25 Appellee's motion to quash appeal is denied. Judgment affirmed.

¶ 26 P.J.E. McEWEN Concurs in the Result.